154 P.3d 1074

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Clinton HEDGES, Defendant–Appellant.**

No. 32464.

Court of Appeals of Idaho.

Jan. 26, 2007.

885

## I.

### FACTS AND PROCEDURE

Hedges was first contacted near his home by a Parma City police officer at 1:33 a.m. after failing to dim his headlights. Upon approaching Hedges, the officer smelled alcohol on Hedges's breath and conducted a field sobriety test. Based on the odor of alcohol and the results of the sobriety test, the officer suspected Hedges was driving under the influence. He requested that Hedges accompany him to the Parma police station to take a breathalyzer test.

At the police station, the officer advised Hedges of his rights. Hedges then inquired whether obtaining a blood test was an option.[1] The officer informed Hedges that the initial testing method was at the discretion of the officer. Hedges asked if he could refuse the breathalyzer and have a blood test instead. The officer informed Hedges that a blood test was not an option for the initial test and that, if he refused the breathalyzer, he would be booked into jail. However, the officer informed Hedges that he could arrange for his own blood test after booking and his release from jail. Hedges agreed to take the breathalyzer test, but stated he would "go get a blood test on his own." The officer responded, "Okay." Hedges was then administered an Alco–Sensor breathalyzer test which indicated Hedges's BAC was over the legal limit.

Hedges was arrested for DUI, I.C. § 18–8004(1)(a), and then transported to the Canyon County jail, arriving at 2:50 a.m.[2] Upon arrival, the officer asked Hedges if he would submit to another breathalyzer test, this time using the county jail's Intoxilyzer 5000 breath testing apparatus, because the officer was curious to know how close the results of the two tests would be. Hedges initially declined, stating he was going to go get a

Lovan, Roker, P.A., Caldwell, for appellant. Matthew J. Roker argued.

Hon. Lawrence G. Wasden, Attorney General; Lori A. Fleming, Deputy Attorney General, Boise, for respondent. Lori A. Fleming argued.

SCHWARTZMAN, Judge Pro Tem.

Clinton Hedges appeals from the district court's intermediate appellate decision reversing the magistrate's order to suppress Hedges's initial blood alcohol content (BAC) test after his arrest for driving under the influence (DUI). For the reasons set forth below, we reverse the district court's order and remand for further proceedings.

---

1. The magistrate found it was unclear whether Hedges inquired about a blood test option while in his driveway or after being transported to the police station. However, the tape recording of Hedges's arrest and subsequent interview with the arresting officer in the record before this Court indicates Hedges initially inquired about a

blood test after being transported to the police station.

2. The policy of the Parma Police Department was to transport DUI arrestees to the Canyon County jail, a drive taking at least twenty minutes.

blood test. The officer then stated: "You can get a blood test. The results would probably show higher." Hedges again responded: "I'm going to get a blood test." Eventually, Hedges agreed to take the second breathalyzer test. This test was conducted with the Intoxilyzer 5000 at 3:07 a.m. and also showed that Hedges's BAC was above the legal limit.[3] After being booked, Hedges contacted a bail bondsman who arrived approximately twenty minutes later. Hedges was released on bond at 5:00 a.m. but did not obtain an independent blood test because he believed too much time had elapsed for the test to be of value.

Hedges filed a motion to suppress the results of both breathalyzer tests. After an evidentiary hearing, the magistrate initially suppressed the results of only the test conducted at the county jail because the officer failed to adhere to the fifteen-minute observation period. Following a motion to reconsider, however, the magistrate ordered the suppression of the first breathalyzer test as well. In its order excluding the results of the breathalyzer test taken at the Parma police station, the magistrate determined that Hedges had expressed his desire to obtain an independent blood test before the initial breathalyzer test and twice more before the second test was administered at the county jail. The magistrate then reasoned that, by not offering Hedges a telephone to arrange for an independent test for the three and one-half hours he was in custody, the officer and the jail staff had denied Hedges's right to a meaningful, independent BAC test.

The state appealed to the district court. On intermediate appeal, the district court concluded that the magistrate's finding of fact regarding Hedges expressed desire to obtain an independent BAC test was supported by substantial evidence. Upon application of the relevant law, the district court determined that the police had no duty to provide, or participate in providing, an independent BAC test for Hedges. The district court went on to note that, while Hedges asserted his intention to get a blood test, he never requested to use a telephone to arrange for testing. The court then concluded that the police did not affirmatively deny his right to an independent BAC test by never offering him a telephone, nor did the police otherwise interfere with his opportunity to make timely arrangements for additional testing. The district court affirmed the magistrate's order suppressing the results of the second breathalyzer test[4] but reversed the order excluding the results of the first test. Hedges appeals.

## II.

## ANALYSIS

■ On review of a decision of the district court, rendered in its appellate capacity, we examine the record of the magistrate court independently of, but with due regard for, the district court's intermediate appellate decision. *State v. Bowman,* 124 Idaho 936, 939, 866 P.2d 193, 196 (Ct.App.1993). The standard of review applicable to questions of law is one of deference to factual findings, but we freely examine whether statutory and constitutional requirements have been met in light of the facts as found. *See State v. Cantrell,* 139 Idaho 409, 411, 80 P.3d 345, 347 (Ct.App. 2003).

Hedges asserts that the district court erred in concluding that the officer did not interfere with Hedges's statutory and due process right to collect potentially exculpatory evidence. He argues the officer made no attempt to facilitate his ability to obtain an independent BAC test in a timely manner. To the contrary, Hedges contends that, by holding him in custody for three and one-half hours despite his repeated assertions of intent to exercise his right to obtain additional testing, the police effectively denied him the opportunity to arrange for a meaningful, independent BAC test.

■ The right of a defendant charged with an alcohol-related driving offense to obtain additional testing is derived from both statutory and constitutional sources. Idaho Code Section 18–8002(4)(d) provides:

---

3. The test results of the Alco–Sensor was .13/.12 and that of the Intoxilyzer 5000 was .12/.12.

4. The state does not appeal this portion of the magistrate's suppression order.

After submitting to evidentiary testing at the request of the peace officer, he may, *when practicable,* at his own expense, have additional tests made by a person of his own choosing. The failure or inability to obtain an additional test or tests by a person shall not preclude the admission of results of evidentiary testing for alcohol concentration or for the presence of drugs or other intoxicating substances taken at the direction of the peace officer *unless the additional test was denied by the peace officer.*

(Emphasis added). Police are also required to inform a defendant of this right to an independent BAC test after submitting to evidentiary testing, when practicable and at the defendant's own expense. I.C. § 18–8002(3)(e); *State v. Rountree,* 129 Idaho 146, 148, 922 P.2d 1072, 1074 (Ct.App.1996). A detainee's inability to obtain additional BAC testing will not result in suppression of the test completed by the state unless this right was affirmatively denied or materially interfered with by the state. *Rountree,* 129 Idaho at 150, 922 P.2d at 1076; *see also Cantrell,* 139 Idaho at 411, 80 P.3d at 347. In the context of a DUI arrest, due process requires that police give a person accused of DUI a reasonable opportunity to procure a timely BAC sample through the accused's own efforts and expense. *See State v. Hayes,* 108 Idaho 556, 559, 700 P.2d 959, 962 (Ct.App. 1985).

■ Idaho courts recognize that there is an inherent exigency in DUI cases due to the destruction of evidence through the metabolism of alcohol in the blood. *State v. Madden,* 127 Idaho 894, 896, 908 P.2d 587, 589 (Ct.App.1995). Because of this exigency, the only opportunity to obtain a meaningful, independent BAC test is within a reasonable time following arrest and administration of the state's evidentiary BAC test. *State v. Carr,* 128 Idaho 181, 184, 911 P.2d 774, 777 (Ct.App.1995). This means that, after administration of the evidentiary BAC test, a defendant cannot be denied access to a telephone upon request to arrange for an independent test. *Id.; see also Madden,* 127 Idaho at 896, 908 P.2d at 589.

In *Madden,* the defendant was placed under arrest for DUI after being stopped and failing a field sobriety test. At the police station, the evidentiary BAC test administered by the police confirmed her BAC was above the legal limit for operating a motor vehicle. The police wrote a citation and transported the defendant to jail for booking. Sometime before or during booking, the defendant requested an independent blood test and asked to speak with her attorney. The police initially denied her request and did not allow her to make a telephone call until two hours after her initial request. This Court concluded that the initial refusal to allow the defendant to use the phone to arrange for an independent BAC test, and the subsequent two-hour delay, deprived the defendant of a meaningful and timely opportunity to arrange for an independent BAC test as provided under I.C. § 18–8002(4)(d). *Madden,* 127 Idaho at 896, 908 P.2d at 589.

In *Cantrell,* after the defendant was arrested for DUI he was transported to jail. Prior to trial, the defendant moved to suppress the results of the state-administered BAC test, arguing that the three-hour delay in releasing him from custody after his bondsman arrived interfered with his due process right to obtain independent testing. Ultimately, the district court denied his motion, and this Court on appeal affirmed the decision of the district court. In contrast to *Madden,* the defendant in *Cantrell* did not assert the right to an independent BAC test nor did he request to make a phone call or contact an attorney. This Court concluded that, absent such an assertion or request or any proof that the state caused his delayed release, there was no denial of independent testing and no violation of the defendant's rights. *Cantrell,* 139 Idaho at 412, 80 P.3d at 348; *see also State v. Shelton,* 129 Idaho 877, 880, 934 P.2d 943, 946 (Ct.App.1997) (state did not violate defendant's due process right to gather exculpatory evidence in the form of an independent BAC test because the defendant failed to assert his right to arrange such a test).

Our previous case law establishes that a defendant must affirmatively assert his or her right to an independent test in order to

trigger a duty on the part of the police. *See Cantrell,* 139 Idaho at 411, 80 P.3d at 347. Once so triggered, this duty, at minimum, requires that police not deny or materially interfere with a detainee's opportunity to make timely arrangements for such testing. *Id.; Rountree,* 129 Idaho at 150, 922 P.2d at 1076; *see also Madden,* 127 Idaho at 896, 908 P.2d at 589. However, what statements qualify as such an assertion and what specifically constitutes the duties of the responding police are unclear.

In a similar custodial circumstance, if a suspect requests the presence of an attorney, then custodial interrogation by the police must cease until the suspect's attorney is present. *Edwards v. Arizona,* 451 U.S. 477, 484, 101 S.Ct. 1880, 1884, 68 L.Ed.2d 378, 385 (1981). The police cannot be forced, however, to make the difficult judgment call of determining whether a suspect might want an attorney based on vague or oblique statements or inquiries about an attorney when a wrong guess carries the threat of suppression of evidence. *Davis v. United States,* 512 U.S. 452, 461, 114 S.Ct. 2350, 2356, 129 L.Ed.2d 362, 372 (1994). Therefore, a police officer's duty to cease questioning is only triggered by a clear and unambiguous request for counsel. *Id.* at 461–62, 114 S.Ct at 2356–57, 129 L.Ed.2d at 372–73; *see also State v. Varie,* 135 Idaho 848, 853, 26 P.3d 31, 36 (2001).

■ By analogy, we apply the same logic to the issue before us in the instant case. We note that this Court has already determined that a police officer has no duty to automatically inquire into a detainee's potential desire to obtain independent testing. *Cantrell,* 139 Idaho at 411, 80 P.3d at 347. Similarly, we now determine the police are not required to guess whether a defendant has asserted his or her right based upon the defendant's passing references to additional testing. We conclude that, once informed of this right, a defendant must make a clear and unambiguous statement of his or her desire to obtain an independent BAC test, such that a reasonable police officer under the circumstances would understand the statement to be an affirmative assertion thereof. *See Davis,* 512 U.S. at 461–62, 114 S.Ct. at 2356–57, 129 L.Ed.2d at 372–73.

Such is the case here, where, at the Parma police station and thereafter at the Canyon County jail, Hedges made clear his desire to obtain an independent BAC test. Any duties the police had in relation to Hedges's expressed intention to obtain an independent BAC test were triggered at that time. We now examine the parameters of this duty.

■ The right to obtain an independent BAC test in the DUI context is constrained by the language of the statute such that the test may only be obtained "when practicable" and at the defendant's own expense. However, as stated above, the exigent nature of BAC results in DUI cases means that any meaningful, independent BAC test must be obtained within a limited time following arrest and administration of the state's evidentiary BAC test. *Carr,* 128 Idaho at 184, 911 P.2d at 777. Therefore, once a defendant has asserted this statutory right, the police have a duty to not unreasonably delay the booking process or the defendant's subsequent release on bond. This is to ensure that a defendant is released as soon as is practicable so that he or she may acquire an independent test that will be of evidentiary value. Additionally, the police also have a duty not to interfere with or affirmatively deny a defendant access to a telephone once a request has been made to make telephonic arrangements for an independent BAC test. *See Shelton,* 129 Idaho at 880, 934 P.2d at 946; *Carr,* 128 Idaho at 184–85, 911 P.2d at 777–78.

■ This is, however, the limit of police responsibility once the right has been asserted. The police have no duty to administer a second BAC test or otherwise participate in arranging an independent BAC test on behalf of the defendant. *Rountree,* 129 Idaho at 150, 922 P.2d at 1076. Furthermore, we now answer an issue originally raised, but which we declined to address, in *Shelton.* *See Shelton,* 129 Idaho at 880, 934 P.2d at 946. We hold that the police have no duty to transport a defendant to a medical facility to obtain an independent BAC test and are not obligated to arrange for a qualified professional to be transported to a state, county, or city holding facility in order to perform the test.

The record reflects that Hedges did not request the use of a phone, nor did he ask to arrange for an independent BAC test while he was in custody. Rather, Hedges asserted, both at the Parma police station and again at the Canyon County jail that he intended to get an independent test when he was released. Thus, the police did not affirmatively deny Hedges the use of a phone and were not required to inquire if he wanted to use one. The only remaining question, then, is whether the police or jail staff unreasonably delayed Hedges's booking and release on bond after he asserted his right to obtain an independent blood test, such that the delay effectively deprived him of a meaningful opportunity to obtain an independent test.

Initially, we note that there is no formula for determining what an unreasonable delay of the booking process might be in any given situation. It is a determination that must be based on the totality of circumstances in each individual case. Here, Hedges was stopped at 1:30 a.m. and transported to the Parma police station for a breathalyzer test. Just prior to taking the breathalyzer, Hedges first asserted his intention to obtain an independent BAC test. Hedges was arrested and transported to the Canyon County jail for booking, arriving at 2:50 a.m. He again asserted his intention to obtain an independent BAC test but, at the officer's repeated request, Hedges took a second breathalyzer test at 3:07 a.m. He was released from custody at 5:00 a.m. The record indicates that a bondsman arrived within twenty minutes of being contacted by Hedges—meaning that by approximately 4:30 a.m. he had completed the booking process and could phone for the services of a bail bondsman to arrange his release.

■ Hedges first asserted his intention to obtain an independent BAC test while he was at the Parma police station. This assertion triggered a police duty to not unreasonably delay Hedges's booking process and release. Whether the actions of the police between Hedges's initial assertion and his release created an unreasonable delay and thus a violation of Hedges's right to obtain a meaningful, independent BAC test, is a question of ultimate fact not specifically addressed by the magistrate. Suffice it to say that Hedges has at least made a prima facie showing that such may be the case. Therefore, the magistrate erred in not determining whether the actions of the police and jail staff during this timeframe, under the totality of the circumstances, created an unreasonable delay of Hedges's release on bond such that it effectively denied or materially interfered with his right to a obtain a meaningful, independent BAC test.

## III.

### CONCLUSION

The police were not required to offer Hedges the use of a telephone absent a direct request or otherwise assist him in obtaining an independent BAC. However, the police and jail staff did have a duty to not unreasonably delay Hedges's booking process or his subsequent release on bond once his right to an independent BAC was asserted. Hedges did not specifically request the use of a telephone or indicate a desire to arrange for an independent BAC test while in custody but did assert his right to obtain an independent BAC test pursuant to I.C. § 18–8002(4)(d) after release. Therefore, the magistrate erred in suppressing the results of Hedges's first BAC test on the grounds that the police did not make a telephone available to Hedges to arrange for independent testing when he did not request one. The magistrate also erred in failing to determine whether the actions of the police and jail staff created an unreasonable delay of Hedges's release on bond such that it effectively denied or materially interfered with his ability to obtain a meaningful, independent BAC test upon release. Accordingly, we reverse the decision of the district court and this case is remanded to the magistrate for further proceedings consistent with the views expressed herein. Additionally, the parties on remand will be provided the opportunity to present additional evidence in regard to the criteria established herein.

Judge LANSING and Judge GUTIERREZ concur.